Filed 1/8/24  P. v.Gann CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


|  |  |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. NATHANIEL MARCUS GANN, Defendant and Appellant. | D081313 (Super. Ct. No. SCD207862) |


APPEAL from an order of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan L. Amann and Christopher P. Beesley, Deputy Attorneys General for Plaintiff and Respondent.

# INTRODUCTION

In 2009, a jury convicted Nathaniel Marcus Gann[1] of first degree murder in the shooting death of her stepfather, but found she did not intentionally and personally discharge a firearm causing death, or commit the murder with the special circumstance of lying in wait. In 2020, Gann petitioned to vacate her conviction and be resentenced under Penal Code section 1170.95 (now 1172.6).[2] The trial court denied her relief at the prima facie stage without the appointment of counsel. We concluded this was prejudicial error in *People v. Gann* (Sept. 22, 2021, D077769) [nonpub. opn.] (*Gann I*), and reversed and remanded to the trial court with instructions to appoint counsel for Gann and allow the parties to provide additional briefing on the petitions.

On remand, the trial court appointed counsel for Gann, and again found she failed to make a prima facie showing she was eligible for relief and denied her petition. Gann appeals once more, asserting our prior opinion in *Gann I* was law of the case and precluded the trial court's denial of her petition at the prima facie stage and that, in the alternative, the court erred on the merits because Gann was not ineligible for relief as a matter of law.

This time we affirm. We disagree our prior opinion was law of the case, and we conclude the jury instructions and verdicts *conclusively* establish that the jury convicted Gann of first degree murder under a theory she was a

---

[1]    At the prima facie review hearing, Gann's attorney informed the trial court she preferred "she, her, hers" pronouns.

[2]    All further undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We refer to the statute throughout as section 1172.6.

coconspirator to murder who acted with the specific intent to kill. That makes her ineligible for relief as a matter of law.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The 2009 Murder Trial*[3]

Gann and her sister, Brae Hansen, were convicted of the murder of their stepfather, Timothy MacNeil, by separate juries in a joint trial. At the time of the murder, Hansen was living with MacNeil in San Diego, while Gann was attending college in Arizona. Gann and Hansen's mother had died the year before and MacNeil had started a new relationship. MacNeil told Hansen she needed to prepare to move out when she turned 18. This angered Hansen, and she and Gann plotted to kill MacNeil. They initially planned to hire a hitman to stage a home invasion robbery, but were unable to find one to hire.

Hansen claimed she no longer wanted to go through with the murder when the hitman plan fell through, but Gann came to MacNeil's house early one morning and told Hansen they were going to proceed with a modified version of the plan whether she wanted to or not. MacNeil was not home when Gann arrived, but returned later that day and was confronted by Gann dressed in black and wearing a mask. Hansen claimed she walked downstairs moments later and saw Gann pointing a gun at MacNeil. Gann

---

3    The following summary of the factual and procedural background is taken from this court's unpublished opinion in *Gann I*, *supra*, D077769. We grant both Gann's unopposed request for judicial notice of the record in Gann's prior appeal in *Gann I*, and Gann's unopposed motion to augment the record with her reply brief filed in the trial court in support of her section 1172.6 petition.

zip-tied Hansen's hands and took her into another room. Hansen heard a struggle followed by several gunshots. MacNeil was shot in the back of the head and died instantly.

Gann's cellmate testified that Gann said she and Hansen decided to " 'take care of' " MacNeil. Gann told her cellmate that Gann wore a mask and " 'acted like it was a robbery.' " Gann tied up Hansen and MacNeil, but MacNeil managed to get free. As Gann was tying up MacNeil again, she accidentally fired the gun and hit MacNeil. Gann then shot MacNeil in the head and fled the scene. Gann presented a defense that suggested Hansen was the actual killer.

The jury was instructed that murder required malice aforethought (CALCRIM No. 520); there were two theories of first degree murder—the murder was willful, deliberate, and premeditated and the murder was committed by lying in wait (CALCRIM No. 521); on evidence of an uncharged conspiracy to commit murder (CALCRIM No. 416); and on liability for the natural and probable consequence of a coconspirator's acts (CALCRIM No. 417). The jury was not instructed on either the felony murder rule or on aiding and abetting on any theory, including on the natural and probable consequences doctrine of aiding and abetting.

Gann's jury convicted her of first degree murder (§ 187, subd. (a)), but found not true the allegations that Gann committed the murder while lying in wait (§ 190.2, subd. (a)(15)) or that she intentionally and personally discharged a firearm causing death in the commission of the murder (§ 12022.53, subds. (d), (e)(1)). Hansen's jury also convicted her of first degree murder and found true the allegations that she committed the murder with the special circumstance of lying in wait and she was vicariously armed with a firearm. The trial court sentenced Gann to a prison term of 25 years

4

to life.  This court affirmed the judgment of conviction in Gann's direct appeal.  (*People v. Gann* (2011) 193 Cal.App.4th 994.)

II.

*The 1172.6 Petitions*

In January 2020, Gann filed a petition for resentencing pursuant to section 1172.6.  She averred that she was convicted of first degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine and she could not now be convicted of first degree murder because of the legislative changes to sections 188 and 189 made effective January 1, 2019.  She further stated she was not the actual shooter, was acquitted of that allegation by a jury, and the evidence demonstrated that the murder took place in a manner of surprise or she was not present and was determined to be liable in another unknown way.  Gann requested the appointment of counsel to represent her on her petition.

In July 2020, the trial court, without appointing counsel for Gann, found Gann failed to make a prima facie showing that she was entitled to relief because she "was the actual shooter and planned the crime" and denied the petition.  About one week later, Gann filed another petition for resentencing, in which she again stated the jury's not true finding on the gun enhancement indicated she was not the actual shooter, and again requested the appointment of counsel.  In August 2020, the court, again without appointing counsel, found Gann failed to make a prima facie showing that she was entitled to relief "[b]ased on [the] facts of the case" and denied the petition.

In *Gann I*, we reversed the trial court's orders denying Gann's petitions.  Accepting the People's concession of error, we concluded the trial court erred by failing to appoint counsel to Gann before finding that she

5

failed to make a prima facie showing of eligibility. We rejected, however, the People's contention that the error was harmless. Instead we concluded the error was prejudicial because there was a reasonable probability that Gann's petition would not have been denied at the prima facie stage had she been afforded legal counsel. We thus remanded the matter to the trial court for the appointment of counsel to represent Gann on her petitions. (*Gann I*, *supra*, D077769.)

On remand, the trial court appointed counsel for Gann and allowed the parties to provide further briefing on the petitions. At the prima facie hearing, the People argued Gann was ineligible for relief as a matter of law because the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine. And because the object of the uncharged conspiracy was murder, whether the jury convicted Gann of first degree murder under a theory of premeditation or as a coconspirator to murder, it necessarily found Gann acted with the specific intent to kill. The People supported their position with *People v. Medrano* (2021) 68 Cal.App.5th 177, 185 (*Medrano*), which held that where murder is the target offense of a conspiracy, the jury cannot adopt a natural and probable consequences theory of murder liability.

Relying on our prior opinion in *Gann I*, Gann argued "there is a mechanism" by which a jury could have found "that perhaps this murder was, in fact, the natural and probable consequences of this uncharged conspiracy rather than the murder being the direct result of the conspiracy." She quoted from *Gann I* our observations, made in the context of analyzing prejudice, that: "It is at least conceivable that the jury convicted Gann based on an act undertaken by h[er] alleged coconspirator, Hansen, that was the natural and probable consequence of the original conspiracy. [¶] For example, the jury

6

could have concluded Gann originally agreed and intended to commit the murder by hiring a hitman, that Hansen then committed the murder on her own once the hitman plan fell apart, and that Hansen's act was a natural and probable consequence of the original common plan or design." When the trial court asked about her theory of the object of the conspiracy, Gann's counsel responded: "It could have been a conspiracy to commit a residential burglary. It could have been conspiracy to commit a robbery. It could have been a conspiracy to commit any of those things. Those are finding of facts that are completely out of bounds" at the prima facie stage.

The trial court was not persuaded. After considering the parties' arguments, it found Gann failed to make a prima facie claim for relief and denied her petition.

DISCUSSION

In this appeal, Gann asserts the trial court erred by denying her petition at the prima facie stage, for two reasons. First, she contends this court's prior opinion in *Gann I* "necessarily" decided she was not ineligible for relief as a matter of law in concluding the failure to appoint counsel was prejudicial. Thus, she argues, the trial court was bound by this court's decision as "law of the case." Second, she contends the court relied on impermissible fact-finding and the record of conviction does not conclusively foreclose her eligibility for resentencing. We disagree with both contentions.

I.

*Section 1172.6*

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) significantly limited the scope of California's felony murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key statutory provisions. (Stats. 2018,

7

ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)  First, Senate Bill 1437 amended section 189 so that defendants "who were neither actual killers nor acted with the intent to kill can be held liable for [felony] murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life[.]' " (*Strong*, at p. 708, quoting § 189, subd. (e)(3).)  Second, it amended section 188 to provide that, except in cases of felony murder, a principal in the crime of murder can only be convicted where she acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); see *People v. Curiel* (2023) 15 Cal.5th 433, 461 (*Curiel*).)

Senate Bill 1437 also established a procedure to allow defendants who could not have been convicted under current law to petition the sentencing court to vacate their murder conviction and resentence them on any remaining counts.  (§ 1172.6, subd. (a); *Curiel*, *supra*, 15 Cal.5th at pp. 449–450.)  A person convicted of murder must file a petition containing a declaration that all requirements for eligibility are met, including (1) "A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime"; (2) "The petitioner was convicted of murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder"; and (3) "The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a)(1)–(3).)

8

Upon receiving a petition that contains all the required information, the trial court is required to appoint counsel to represent the petitioner if one is requested. (§ 1172.6, subd. (b); see *People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*).) If, after the parties have had an opportunity to submit briefings, the court determines the petitioner has made a prima facie case for relief (§ 1172.6, subd. (c)), it must issue an order to show cause and conduct an evidentiary hearing (§ 1172.6, subds. (c) & (d)(1)).

This prima facie inquiry is "limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The trial court takes the petitioner's factual allegations as true and makes a preliminary assessment whether the petitioner would be entitled to relief if her factual allegations were proved. (*Ibid.*) In making this preliminary assessment, "the trial court may look at the record of conviction" to "distinguish petitions with potential merit from those that are clearly meritless" (*ibid.*), but it may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " (*id.* at p. 972). " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.) In other words, " '[i]f the petition and record in the case establish *conclusively* that the [petitioner] is ineligible for relief, the trial court may dismiss the petition' " at the prima facie stage. (*Curiel*, *supra*, 15 Cal.5th at p. 450, italics added.)

## II.

### *Our Prior Opinion in* Gann I *Was Not Law of the Case*

We reject Gann's first contention that the trial court's denial of her section 1172.6 petition violated the law of the case doctrine, under which "a principle or rule that a reviewing court states in an opinion and that is

9

necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94.) "We will apply the law of the case doctrine where the point of law involved was necessary to the prior decision and was ' "actually presented and determined by the court." ' " (*People v. Gray* (2005) 37 Cal.4th 168, 197.)

Gann argues that in holding the failure to appoint counsel was prejudicial, this court "necessarily" decided she was not ineligible for resentencing as a matter of law in *Gann I*. She points out that we examined the jury instructions and verdicts and concluded " 'it is at least conceivable that the jury convicted Gann based on an act undertaken by h[er] alleged coconspirator, Hansen, that was the natural and probable consequences of the original conspiracy," and " '[w]hether there was a viable theory under which the jury could have convicted Gann, without determining [s]he had such specific intent [to kill], requires *a review of the evidence*, and thus should be resolved by the trial court.' " (Boldface omitted.) She thus asserts the trial court was bound by our opinion in *Gann I* to find she made a prima facie showing, entitling her to an evidentiary hearing.

We disagree. The issue presented and determined by this court in *Gann I* was whether there was *a reasonable probability that had Gann been afforded assistance of counsel*, her petition would not have been summarily denied without an evidentiary hearing. (*Gann I*, *supra*, D077769.) It was not whether Gann made a prima facie case requiring an order to show cause and evidentiary hearing. Our opinion expressly stated as much: "To be clear, we offer no opinion on whether this is an appropriate way to reconcile the evidence, the instructions, and the verdict, but simply conclude that Gann is entitled to the assistance of counsel in presenting h[er] interpretation of an

10

arguably confusing trial record to the superior court judge who reviews h[er] petition." (*Gann I*, *supra*, D077769.) In concluding "there is *at least* a reasonable probability that Gann's petition would not have been denied prior to the issuance of an order to show cause had Gann been afforded legal counsel," we again stated: "[W]e express no opinion as to whether the petition should ultimately be granted." (*Gann I*, *supra*, D077769.)

As the People argued at the prima facie hearing on remand, our concern in *Gann I* was to ensure Gann had the benefit of counsel consistent with *Lewis*, *supra*, 11 Cal.5th 952. We thus remanded the matter to the trial court "with instructions for the court to appoint counsel for Gann and *permit additional briefing*" under section 1172.6, subdivision (c), thereby leaving the prima facie determination for the trial court. (*Gann I*, *supra*, D077769, italics added.)! The law of the case doctrine did not apply to preclude the trial court from making that determination, including one that was adverse to Gann. We turn to the merits.

III.

*Gann Is Ineligible for Relief as a Matter of Law*

We independently review a trial court's determination on whether a petitioner has made a prima facie showing of eligibility for relief under section 1172.6. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) Where the record of conviction conclusively establishes the petitioner was convicted on a theory of liability not affected by Senate Bill 1437, the court may deny the petition at the prima facie stage. (§ 1172.6, subd. (c); see *Curiel, supra,* 15 Cal.5th at p. 450; *Harden*, at pp. 47–48, 59–60.)

We begin our analysis with the jury instructions. The trial court instructed the jury with CALCRIM No. 520 that to find Gann guilty of murder, the People needed to prove she (1) "committed an act that caused the

11

death of another person" and (2) "[w]hen [she] acted, [s]he had a state of mind called malice aforethought." The court further instructed the jury with CALCRIM No. 521 that the People were pursuing "first degree murder under two theories: (1) that the murder was willful, deliberate, and premeditated, and (2) that the murder was committed by lying in wait." The same instruction told the jury Gann acted willfully if she "intended to kill," and deliberately and with premeditation if she "carefully weighed the considerations for and against [her] choice, and knowing the consequences, decided to kill" beforehand.

As an alternative theory of liability, the trial court also instructed the jury on evidence of an uncharged conspiracy with CALCRIM No. 416. The instruction provided that: "A member of a conspiracy is criminally responsible for the acts or statements of any other member of the conspiracy done to help accomplish the goal of the conspiracy." Importantly here, the instruction told the jury that the target crime of the conspiracy in this case was *murder*; no other crimes were identified as an object of the conspiracy.

CALCRIM No. 416[4] further provided that to prove Gann was a member of a conspiracy to commit murder, the People had to prove:

"1. [Gann] *intended to agree and did agree* with the other defendant to *commit murder* and escape detection.

"2. At the time of the agreement, [Gann] and the other alleged member of the conspiracy *intended that one or more of them would commit murder* and escape detection;

---

4  We have italicized portions of CALCRIM No. 416 for emphasis. The instruction as given to the jury was not italicized.

"3. [Gann or Hansen], or both of them committed at least one of the following [listed] overt acts[5] *to accomplish murder* and escape detection."

"AND

"4. At least one of these overt acts was committed in California."

The instruction also informed the jury that "[t]o decide whether [Gann] and the other alleged members of the conspiracy *intended to commit murder*," it should refer to "the separate instructions . . . given . . . on that crime." Again it stated, "The People must prove that the members of the alleged conspiracy had an agreement and *intent to commit murder*." Finally, the instruction told the jury: "You may not find [Gann] guilty under a conspiracy theory unless all of you agree that the People have proved that [Gann] conspired to commit at least one of these crimes, and you all agree which crime [s]he conspired to commit. [¶] Someone who merely accompanies or associates with members of a conspiracy but who does not intend to commit the crime is not a member of the conspiracy."

The jury found Gann guilty of first degree murder but found the lying-in-wait special circumstance allegation not true. The jury also found the allegation she intentionally or personally discharged a firearm causing death to be not true, which is consistent with a conclusion the jury entertained a reasonable doubt that Gann was the actual shooter. This leaves two possibilities: the jury convicted Gann of first degree murder on either the theory she acted willfully, deliberately and with premeditation as an aider and abettor, or as a coconspirator to murder. We can eliminate an aider and

---

5    The first two of the nine overt acts listed were: "Gann purchased clothing to be used during the killing in Phoenix, Arizona" and "Gann drove from Phoenix, Arizona, to San Diego, California."

13

abettor theory because the jury was not instructed on any theory of aiding and abetting, including a natural and probable consequences theory. Thus the jury's verdict of first degree murder could be predicated only on the remaining theory of conspiracy to commit murder with express malice. The jury instructions did not allow the jury to convict Gann under an imputed malice theory because the instructions required a finding that Gann, herself, intended to kill.

"[C]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder, the object of the conspiracy. Since murder committed with intent to kill is the functional equivalent of *express malice* murder, conceptually speaking, no conflict arises between the specific intent element of conspiracy and the specific intent requirement for such category of murders. Simply put, where the conspirators agree or conspire with specific intent to kill and commit an overt act in furtherance of such agreement, they are guilty of conspiracy to commit express malice murder." (*People v. Swain* (1996) 12 Cal.4th 593, 602.) And " 'all conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder.' " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 641.)

A defendant is ineligible for resentencing under Senate Bill 1437 if she was not convicted under any theory of liability affected by Senate Bill 1437's amendments to the law of murder. (*Strong*, *supra*, 13 Cal.5th at p. 708.) Thus the record of conviction here conclusively establishes Gann is ineligible as a matter of law.

14

In reaching this conclusion, we acknowledge our lack of consistency in dealing with this issue. In *Gann I*, relying on CALCRIM No. 417,[6] we stated: "[I]t is at least conceivable that the jury convicted Gann based on an act undertaken by [her] alleged coconspirator, Hansen, that was the natural and probable consequences of the original conspiracy. For example, the jury could have concluded Gann *originally* agreed and intended to commit the murder by hiring a hitman, that Hansen then committed the murder on her own once the hitman plan fell apart, and that Hansen's act was a natural and probable consequence of the original common plan or design." (*Gann I, supra*, D077769.) We noted that because Gann was not charged or convicted of a conspiracy to commit murder, "the record does not include findings by the jury specific to the alleged conspiracy and it is not clear that the jury, as instructed, in *this* case understood a conviction for first degree murder based on a conspiracy theory required that Gann had the specific intent to kill" her stepfather. (*Gann I, supra*, D077769.) Understandably, Gann relied on this language from our prior opinion to support her prima facie showing. But we were wrong.

The jury was instructed under CALCRIM No. 416 that the only target crime of the conspiracy was the crime of murder; that to find Gann guilty of conspiracy to commit murder, the jury must find she "intended to agree and did agree . . . to commit murder"; and the jury must "all . . . agree . . . [Gann] conspired to commit" murder. The jury was not instructed on any other target crimes (such as a residential burglary or a robbery, as Gann's trial

6    Relevant here, CALCRIM No. 417 provided: "A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy."

15

counsel argued at the prima facie hearing on remand). Our reliance in *Gann I* on the natural and probable consequences language of CALCRIM No. 417 was misplaced. (See *Medrano, supra,* 68 Cal.App.5th at p. 185.)

In *Medrano,* the defendant was a participant, but not the actual shooter, in a drive-by-shooting into a crowd. (*Medrano, supra,* 68 Cal.App.5th at p. 179.) A jury convicted him of two counts of first degree special circumstance murder and conspiracy to commit murder, among other charges. (*Ibid.*) Like here, the *Medrano* jury was instructed with similar language found in CALCRIM No. 417. The jury was instructed with CALJIC No. 6.11, which provided: " 'A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but is also liable for *the natural and probable consequences of any act of a co-conspirator to further the object of the conspiracy*, even though such act was not intended as a part of the original plan[.]' " (*Medrano,* at p. 184.) The Court of Appeal rejected the defendant's assertion that this instruction allowed the jury to find him guilty of conspiracy to commit murder under the natural and probable consequences doctrine, and affirmed the denial of his 1172.6 petition. (*Ibid.*)

Although the *Medrano* court acknowledged the jury was instructed on the natural and probable consequences doctrine, it concluded the defendant was not convicted of first degree murder under that impermissible theory. The court explained: " 'Under the natural and probable consequences theory of aiding and abetting a murder, a defendant can be found guilty of murder if he or she aids and abets a crime (i.e., the target crime) and murder (i.e., the nontarget crime) is a natural and probable consequence of that target crime.' [Citation.] Here, *the target offense was first degree murder*." (*Medrano, supra,* 68 Cal.App.5th at pp. 182–183.) Thus "[f]irst degree murder was the

16

object of the conspiracy, not the natural and probable consequence of an act committed to further the object of the conspiracy." (*Id.* at p. 184.) In other words, because the jury convicted the defendant of conspiracy to commit murder, "it did not base its conviction of the target offense — first degree murder — on the natural and probable consequences doctrine because that doctrine applies to *unintended, nontarget offenses*." (*Id.* at p. 185, italics added.)

*Medrano* makes clear the natural and probable consequences language in CALCRIM No. 417 had no effect here, notwithstanding the conspiracy to commit murder was an uncharged crime. As we have explained, the record of conviction reveals the jury's verdict of first degree murder could be predicated only on the uncharged conspiracy to commit murder. The natural and probable consequences doctrine applies to unintended, nontarget offenses. And here, the jury was not instructed on any target crime other than murder. The record of conviction conclusively establishes Gann was convicted on a theory of liability not affected by Senate Bill 1437 and the trial court properly denied her petition at the prima facie stage.[7]

---

[7] Because our review is de novo, Gann's assertion that the trial court engaged in impermissible fact-finding is not relevant to our analysis.

## DISPOSITION

The October 28, 2022 order denying the petition for resentencing under section 1172.6 is affirmed.

DO, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.